IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| ANTHONY MAURICE JONES, <br>     Plaintiff, <br><br> vs. <br><br> JOHNSON CITY SCHOOLS, <br> DR. STEVE BARNETT, GINGER <br> CARTER, CATHERINE LAYNE, <br> KEITH TURNER, JOSH CARTER, <br> CHRIS LAYNE, and DAVID NUTTER, <br> jointly and severally and personally, <br> and individually, <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | DOCKET NO. _____ |

## COMPLAINT FOR RACE, SEXUAL ORIENTATION, AND AGE DISCRIMINATION IN VIOLATION OF TITLE VII

Comes now, Anthony Jones, Plaintiff (hereinafter referred to as "Jones"), by and through counsel, and for his Complaint for Race, Sexual Orientation, and Age Discrimination in Violation of Title VII states as follows:

### JURISDICTION

1. This action is brought on behalf of Anthony Jones to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.; and T.C.A. §49-5-510.

2. This Court has jurisdiction of the action under 42 U.S.C. §2000e et seq. and 28 U.S.C. §1331 and 28 U.S.C. §1332.

1

## VENUE

3.      Venue is proper before this Court pursuant to 28 U.S.C §1391(b).

## PARTIES

4.      Johnson City Schools ("JCS") is an employer of more than 20 persons in Johnson City, Tennessee.

5.      Jeff Aldridge ("Aldridge") is the Assistant Athletic Director a resident of Sullivan County, Tennessee.

6.      Keith Turner ("Turner") is the Athletic Director and a resident of Carter County, Tennessee.

7.      Dr. Josh Carter ("Carter") is the Principal and a resident of Washington County, Tennessee.

8.      Dr. Steve Barnett ("Barnett") is the Superintendent of Johnson City Schools and a resident of Washington County, Tennessee.

9.      Ginger Carter ("G. Carter") is a Johnson City School Board Member and a resident of Wahington County, Tennessee.

10.     David Nutter ("Nutter") is a resident of Washington County, Tennessee.

11.     Catherine Layne ("C. Layne") is a resident of Washington County, Tennessee.

12.     Chris Layne ("Ch. Layne") is a resident of Washington County, Tennessee.

2

13. Anthony Jones ("Jones") is a Fifty-Three (53) year old African American resident of Washington County, Tennessee.

14. Johnson City Schools is a person within the meaning of 42 U.S.C. §2000e(a) and an employer within the meaning of 42 U.S.C. §2000e(b).

## FACTS

15. Jones was hired as the Head Track Coach in Summer of 2016 by Keith Turner.

16. Jones held the position as Head Track Coach for Seven (7) years.

17. On June 23, 2023, in an unannounced meeting with Turner, Carter, and Aldridge, with no representative, the trio removed Jones from his position as Head Track Coach, in their words, "for now". Not understanding the reason for the removal, Jones resigned by letter, but rescinded the resignation on June 29, 2023.

18. Jones requested a meeting on June 29, 2023, seeking his representative pursuant to Johnson City Schools policy.

19. Approximately one month later, July 24, 2023, Jones received a text and email from Turner inviting him to reapply. He was re-hired on July 27, 2023.

20. By August 4, 2023, Dr. Barnett hired an Interim Head Coach which terminated Jones' employment.

21. On December 14, 2023, Jones received an email requesting he and other coaches sign contracts.

22. Jones' January 2024 contract listed him as an Assistant Coach.

3

23. Jones requested a meeting to clarify this error but no response to his meeting requests came.

24. This transfer/demotion to Assistant Coach from Head Coach flies against Johnson City Schools policy and represents an illegal transfer under Tennessee and Federal law. The transfer was improperly motivated as well as arbitrary and capricious. T.C.A. §49-5-510.

25. The Defendants, as a collective, denied that Jones was rehired as Head Track Coach.

26. During and throughout this time, G. Carter, S. Carter, mounted a campaign to remove coaches including, but not limited to, Plaintiff Jones.

27. The Defendants all reported to parents and the Superintendent Barnett that Jones was homosexual, with reports coming in from parents promoted by the Defendants that Jones engaged in some conduct which was unbecoming resulting in Jones' removal from the position of Head Track Coach.

28. Defendants were upset that Jones enforced the policies of Johnson City Schools that athletes could not be coached by private coaches on Johnson City School tracks while meets, practice or other activities related to the track program were in progress.

29. On February 29, 2024, Defendant Barnett, upon being challenged by Jones and other coaches, claimed there were parent and community complaints against Jones although no complaints existed in his file. This meeting was recorded

4

and despite representations of complaints, Turner confirmed no complaints ever existed.

30.     Turner told Johnny Tucker, in November 2023, Turner told Tucker he was being paid from Jones stipend (which was a lie). Turner told Tucker that it was a political hit job to take Jones' job by C. Layne. C. Layne then began a campaign of making false statements against Jones. C. Layne even had conversations with at least three (3) School Board Members outside of school board meetings (violating the Tennessee Sunshine Law).

31.     In addition to C. Layne and Ch. Layne's conduct in making false statements of fact, Barnett claimed Jones was inefficient, unorganized, did not know run a track meet and the way he talked.

32.     During this period of time, a parent confirmed that comments were made by Defendants that Jones was terminated because he was gay and conducted himself inappropriately in the boys and girls locker room. Dr. Barnett was angry with Keith Turner and Josh Carter for refusing an order to terminate Jones on false claims about Jones' conduct and coaching abilities in an effort to promote C. Layne to the position of Head Track Coach.

33.     Jones was never reinstated to his position as Head Track Coach as he was considered by Barnett that Jones never had a job.

34.     The individual who is currently Head Track Coach obtained the job without the job having been posted and without an interview process opened up to individuals outside the school system.

35. Defendants also participated in circulating a rumor that Jones stole money from the concession stand. Defendants told others that Jones had been dismissed as Head Track Coach for stealing money form concessions and for being gay engaging in inappropriate conduct in the boys and girls bathrooms. No investigation of such inappropriate conduct exists or was ever undertaken. No complaint of such inappropriate conduct exists. And nothing exists because such conduct never happened.

36. Jones was verbally assaulted in public at a track meet by C. Layne regarding Jones taking a stand on the policy against private coaching of athletes already on the track team. Layne exploded on Jones whose practice was over, screaming "Get off the track." At that point, the track meet had not begun. These and other personal slights levied against Jones created a hostile and harassing environment. Defendant Barnett failed to address this environment in which Jones experienced alight after slight.

37. Jones is an individual citizen of the United States of America entitled to the protections afforded by the Constitution of the United States and its various prohibitions against discriminatory treatment in employment.

PERVASIVE HARASSMENT

38. Jones was treated differently from other Head Track Coaches.

39. His complaints against these individuals went uninvestigated

40. Other Head Coaches were not subjected to similar treatment.

41.     Other Head Coaches were not subjected to text messages from a Johnson City School Board member that his job was at stake.

42.     Jones often felt uncomfortable when faced with this different treatment.

43.     Jones tolerated the differing treatment.

44.     Jones once reported to his supervisor about the differing treatment but was met with cynicism and ridicule.

45.     The differing treatment did not stop during Jones' employment.

<u>CLAIMS</u>

<u>RACIAL DISCRIMINATION</u>

46.     Defendants have discriminated against Jones, on the basis of his race, African American, in violation of § 703(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1), among other ways, by:

(a) subjecting Jones to racial harassment during his employment with JCS, which adversely affected the terms, conditions, and privileges of his employment; and (b) failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment of Jones.

49.     Jones timely filed a charge of discrimination with the EEOC, EEOC Charge No. 494-2024-03334, in which he alleged that he had been subjected to, among other things, racial harassment and retaliation during his employment with Jones pursuant to § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, the EEOC investigated Jones' charge. Since the

7

EEOC was behind on processing charges, some time passed before the EEOC was able to notify Jones that it began an investigation into his claims of discrimination. The EEOC subsequently sent Jones Notice of Right to Sue recommending settlement/mediation. *Attached hereto as **Exhibit A**, is Jones' Charge of Descrimination.*

<u>DISCRIMINATION ON THE BASIS OF SEXUAL ORIENTATION</u>

50.    JCS, has discriminated against Jones, on the basis of his sexual orientation, in violation of § 703(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1) and 2000e-16, among other ways, by:

(a) subjecting Jones to sexual harassment during his employment with JCS, which adversely affected the terms, conditions, and privileges of his employment; and

(b) failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment of Jones.

52.    Jones timely filed a charge of discrimination with the EEOC, EEOC Charge No. 494-2024-03334, in which he alleged that he had been subjected to, among other things, sexual harassment and retaliation during his employment with JCS pursuant to § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 and 2000e-16 the EEOC investigated the charge. Since the EEOC was behind on processing charges, some time passed before the EEOC was able to notify Jones that it began an investigation into her claims of discrimination. The

8

EEOC subsequently sent Jones Notice of Right to Sue recommending settlement/mediation. *Attached hereto as **Exhibit B**, is Jones' Notice of Right to Sue.*

## DISCRIMINATION ON THE BASIS OF AGE

53.     JCS, has discriminated against Jones, on the basis of his age, in violation of Age Discrimination in Employment Act of 1975, as amended, 42 U.S.C. § 6101 - 6107, among other ways, by:

(a) subjecting Jones to different treatment on the basis of his age which adversely affected the terms, conditions, and privileges of his employment;

(b) JCS hired a younger individual and replaced Jones contrary to JCS policy and Tennessee law regarding transfers. and

(b) failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment of Jones.

54.     Jones timely filed a charge of discrimination with the EEOC, EEOC Charge No. 494-2024-03334, in which he alleged that he had been subjected to, among other things, age discrimination and retaliation during his employment with JCS pursuant to 42 U.S.C. § 6101 - 6107,, the EEOC investigated the charge. Since the EEOC was behind on processing charges, some time passed before the EEOC was able to notify Jones that it began an investigation into her claims of discrimination. The EEOC subsequently sent Jones Notice of Right to Sue recommending settlement/mediation.

## EQUAL PAY ACT VIOLATION

55. Barnett has been the Superintendent JCS since some time prior to Jones' employment.

56. During the relevant time period, Jones was employed as a Head Track Coach, Jones was paid less than a similarly situated Head Track Coach.

57. The Interim head coach made twice the amount of Jones.

58. Jones had similar qualifications as the Interim Head Coach hired to replace Jones, even after he was hired back. JCS thought Jones could do the job because of his performance record, having held the job for the preceding Seven (7) years, yet JCS paid Jones less than his other Head Coach counterparts for the same work with similar qualifications.

59. Other Head Coaches in service to JCS for periods of time similar to Jones were paid less than other Head Coach counterparts.

60. JCS' conduct in paying Jones less than his other Head Coach counterpart who was similarly situated constitutes a violation of the Equal Pay Act 29 U.S.C. § 206d.

<u>CONSTRUCTIVE DISCHARGE AND RETALIATION</u>

61. JCS has discriminated against Jones, in violation of § 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a), among other ways, by:

(a) retaliating against Jones by constructively discharging him because he complained about his treatment to his supervisor and because he complained about his co-worker's conduct to a supervisor; and

10

(b) failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment of Jones.

59.     All conditions precedent to the filing of this suit have been performed or have occurred.

WHEREFORE, Jones prays that the Court grant the following relief:

(a)     Enjoin the defendant from failing or refusing to:

(i) provide sufficient remedial relief to make whole Jones for the loss he has suffered as a result of the discrimination against him as alleged in this complaint; and

(ii) take other appropriate nondiscriminatory measures to overcome the effects of the discrimination; or

(b)     Award compensatory damages to Jones as would fully compensate him for injuries caused by the defendant's discriminatory conduct, pursuant to and within the statutory limitations of §102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

(c)     Award compensatory damages to Jones as would fully compensate him for injuries and losses caused by the defendant's negligent retention of its employee.

(d)     Award compensatory damages to Jones as would fully compensate him for injuries and losses caused by the defendant's constructive discharge and retaliation.

(e)     Award such additional relief as justice may require, together with plaintiff's costs and disbursements in this action.

11

## JURY DEMAND

Jones hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

RESPECTFULLY SUBMITTED,

**BOWE & ASSOCIATES, PLLC**

By: _____
Curtis L. Bowe, III (BPR 017037)
*Attorney for Plaintiff*
6120 Shallowford Road, Suite 107
Chattanooga, Tennessee 37421
423.475.6070/423.475.6072

## VERIFICATION

STATE OF TENNESSEE  )
          )
COUNTY OF WASHINGTON )

  Anthony Maurice Jones, being first duly sworn, makes an oath that the statements made in his foregoing Complaint for Wrongful Termination and Violation of title VII are true as of his own knowledge and belief and his Complaint is not made out of levity or in collusion with the Defendants, but in sincerity and truth for the causes mentioned in the Complaint for Wrongful Termination and Violation of Title VII and that he is justly entitled to the relief herein sought.

ID NDdGwyB6o9kWwSKc1FztSG46
_____
Anthony Maurice Jones

2/3/2025
_____
Date

12

# eSignature Details

**Signer ID:** **NDdGwyB6o9kWwSKc1FztSG46**
Signed by: Anthony M Jones
Sent to email: speedjones07@gmail.com
IP Address: 67.147.71.116
Signed at: Feb 3 2025, 3:51 pm EST